U.S. BANK TRUST NATIONAL
ASSOCIATION, AS TRUSTEE OF THE
LODGE SERIES III TRUST

VERSUS

MELVIN PARKS AND LUCRESIA
FONTENBERRY PARKS

NO. 22-CA-56

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 87,726, DIVISION "E"
HONORABLE TIMOTHY S. MARCEL, JUDGE PRESIDING

November 02, 2022

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Robert A. Chaisson, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
   **JJM**
   **SMC**
   **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
MELVIN PARKS AND LUCRESIA FONTENBERRY PARKS
     David S. Moyer

COUNSEL FOR PLAINTIFF/APPELLEE,
U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE
LODGE SERIES III TRUST
     Rader Jackson
     Cris R. Jackson
     Joseph H. Riley, II
     Rachel Breaux

**MOLAISON, J.**

This appeal arises from a promissory note and mortgage ("the Note"), which encumbers the appellants', Melvin and Lucresia Parks ("the Parks"), property located at 317 Riverwood Drive in St. Charles Parish. The Parks challenge the trial court's judgment denying their motion for permanent injunction and subsequently allowing the appellee, U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust ("U.S. Bank"), to enforce its right to executory process. For the reasons that follow, the judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

On February 19, 2008, the Parks entered into a mortgage with Wachovia Mortgage Corporation, which secured property located at 317 Riverwood Drive in St. Rose. The provisions of the Note entailed a principal sum of $345,000, bearing a 6.000% per annum interest rate from the date executed until paid, as well as a monthly principal and interest installment of $2,068.45. Following its execution, the Note was later assigned to Wells Fargo Bank, NA, on or about December 6, 2011. The appellants have not attacked the validity of the note's chain of ownership from Wachovia to Wells Fargo.

On March 1, 2013, the Parks executed a Loan Modification Agreement with Wells Fargo Bank, NA, resetting the principal balance to $385,562.02 with $86,502.02 to be deferred and non-interest bearing.[1] Thus, the modified terms of the Note provided an interest-bearing new principal balance of $299,000, 4.000% per annum interest rate, monthly principal and interest installments at $1,249.64,

---

[1] Pursuant to LA. R.S. 9:5390(A):

"The effectiveness, validity, enforceability, and priority of a conventional mortgage, conventional chattel mortgage, or security agreement are not adversely affected by a change in the terms of the note or notes secured thereby, including but not limited to such changes as extension of the maturity of the note or notes, an increase or decrease of the interest rate stipulated in the note or notes, or the agreement that the unpaid accrued interest of the note or notes would be converted to principal and thereafter bear interest."

and extended the life of the Note until March 1, 2053. Following the Loan

Modification, the Note was later assigned as follows:[2]

1. December 12, 2018, the Note is assigned to Wilmington Savings Fund, Society FSB.
2. March 20, 2019, the Note is assigned to plaintiff, U.S. Bank.

On March 13, 2020, U.S. Bank filed a petition for executory process at the

Twenty-Ninth Judicial District Court, which sought to enforce its right to foreclose

on the property as provided by the terms of the Note. U.S. Bank's verified petition

showed the Note was delinquent for the installment due on February 1, 2019, and

all subsequent installments.[3] On March 17, 2020, the trial court signed the order of

seizure and sale and set the Sheriff's Sale of the Parks' property for August 17,

2020. On June 26, 2020, within their answer, the Parks filed an exception of no

cause of action and also filed a subsequent petition for preliminary injunction,

which sought to enjoin U.S. Bank from selling or transferring the property. The

rule to show cause was set for September 11, 2020.

On July 7, 2020, the Parks filed a motion to reset their petition for

preliminary injunction to August 7, 2020, to obtain a judgment on their request for

injunctive relief prior to the Sheriff's sale. Following the hearing on August 7,

2020, the trial court granted the Parks' injunctive relief against U.S. Bank and the

hearing regarding the Parks' exception of no cause of action was set for September

11, 2020. At the hearing on the exception of no cause of action, the trial court

decided to take the matter under further advisement; however, the injunctive relief

against U.S. Bank was extended until November 19, 2020.

Following the trial court's decision to grant the Parks' preliminary

injunction, U.S. Bank filed an application for supervisory writ to this Court on

December 7, 2020. We denied U.S. Bank's application without consideration as to

---

[2] As evidenced in the Parks' "exception for no cause of action" filed June 26, 2020. The Parks do not attack the validity of transfers that resulted in the note's possession by U.S. Bank.
[3] See, La. C.C.P. art. 2635 and La. C.C. art. 3312 (cmt.(a)).

its merits because it was not filed within the 15-day period from the day the judgment was signed as per La. C.C.P. art. 3612.[4] Thereafter, the appellants petitioned the trial court for a permanent injunction, and a hearing was held on July 8, 2021. On October 19, 2021, the trial court denied the appellants' petition for a permanent injunction and the instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, the Parks first contend that the trial court erred in denying their exception of no cause of action based upon its finding that the original mortgage was a "bearer note/paper," and therefore subject to negotiation by transfer of possession alone. In their second assignment of error, the Parks argue that the trial court erred in denying their petition for injunction based on its finding that the loan modification did not extinguish the original note and mortgage and create a new and separate principal obligation.

## STANDARD OF REVIEW

Our standard of review regarding this appeal is two-fold. First, the Parks assert the trial court erred in its decision to deny the exception of no cause of action. In reviewing a trial court's ruling on an exception of no cause of action, appellate courts apply the *de novo* standard of review. *Herman v. Tracage Development, L.L.C.*, 16-0082 (La. App. 4 Cir. 9/21/16), 201 So.3d 935, 939. The function of the exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. *Scanlan v. MBF of Metairie, LLC*, 21-323 (La. App. 5 Cir. 3/23/22), 337 So.3d 562, 565 (citing *Grubbs v. Haven Custom Furnishings, LLC*, 18-710 (La. App. 5 Cir. 5/29/19), 274 So.3d 844, 847-48). We apply the *de novo* standard because the exception raises a question of law, thus the trial court's decision is based only on the sufficiency of the petition and all facts pleaded in the petition must be accepted

---

[4] *U.S. Bank Trust v. Parks*, 20-471 (La. App. 5 Cir. 1/14/21), (unpublished writ).

as true. *Id*. Second, the Parks assert the trial court erred in denying their petition for injunctive relief. In reviewing denials of preliminary or permanent injunctions, we utilize the abuse of discretion standard of review. *Delta Black, L.L.C. v. Parish of St. Bernard*, 12-1153 (La. App. 4 Cir. 1/16/13), 108 So.3d 336, 340, (*citing A.M.E. Disaster Recovery Services, Inc, v. City of New Orleans,* 10-1755 (La. App. 4 Cir. 8/24/11), 72 So.3d 454, 456).

## LAW AND ANALYSIS

*Classification of the Original Note*

The promissory note in this matter is a negotiable instrument pursuant to La. R.S. 10:3-104; therefore, it must be further classified as either a "bearer note/paper" or an "order note." The Parks contend that the trial court erred in its finding that the Note, made payable to Wachovia Mortgage Corporation when it was first executed, is a "bearer note/paper." The Parks asserted in their exception of no cause of action that the Note should instead be classified as an "order note" in accordance with R.S. 10:3-109(b). Therefore, the Parks argue that U.S. Bank lacked the authority to file an action for executory process because it was required to "submit with his [sic] petition authentic evidence of: (1) the note, bond, or other instrument evidencing the obligation secured by the mortgage, security agreement, or privilege; and (2) the authentic act of mortgage or privilege on immovable property importing a confession of judgment" pursuant to La. C.C.P. art. 2635(A). However, in accordance with the provisions of La. R.S. 9:4422(3), as the holder of the promissory note, regardless of its negotiability, U.S. Bank was entitled to executory process absent authentic evidence of any assignments and transfers of the promissory note. Thus, we find the Parks' first argument is without merit.

To determine the classification of the Note, we look to the express language of the Note executed on February 19, 2008. The indorsement states: "PAY TO THE ORDER OF [blank], WITHOUT RECORSE, WACHOVIA MORTGAGE

CORPORATION, Signed: Karen Davis, Assistant Vice President." The language of the Note provides that it is payable to Wachovia Mortgage Corporation, an identified entity; therefore, the Note originated as an Order Note pursuant to La. R.S. 10:3-109(b). However, as this Court has previously held, an instrument payable to an identified person may become payable to bearer if it is indorsed in blank in accordance with La. R.S. 10:3-205(b). *Federal Nat. Mortg. Ass'n v. Thao Thi Duong*, 14-689 (La. App 5 Cir. 2/11/15), 167 So.3d 920, 923. When a negotiable instrument has been indorsed "in blank," this means that no specific person has been identified as the payee.[5] When Wachovia transferred the Note, absent a special indorsement, and subsequently transferred to U.S. Bank, the Note was negotiated by its transfer of possession alone until specially indorsed as per La. R.S. 10:3-205(b).

Furthermore, pursuant to La. C.C. art. 2645, comment (b), the transfer of a promissory note also transfers the accessory rights of mortgage and privilege that secure the debt involved. *See also Holliday v. Logan*, 134 La. 427, 64 So. 277, 278 (1914). This is further supported by the language of the mortgage,[6] which states: "***This Security Instrument secures to Lender*** (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) performance of Borrower's covenants and agreements under this Security Instrument and the Note…***and to the successors and assigns of MERS***…" (Emphasis added.) Thus,

---

[5] As explained in 13 West's Legal Forms, Commercial Transactions § 41:152 (5th ed.):

> A blank indorsement is usually the signature of the indorser on the back of the instrument without other words. When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed. U.C.C. § 3-205(b) and Comment 2.

> This Court recognized the validity of an identical indorsement in blank in *Federal Nat. Mortg. Ass'n v. Thao Thi Duong, supra*. In that case, as in the instant case, the indorsement on an instrument read "pay to the order of ." The line was left blank, followed by the indorsement signature. We held that the format constituted a blank indorsement which created bearer paper, pursuant to La. R.S. 10:3-104, 10:3-109(c), and 10:3-205.

[6] As reflected in the record, the mortgage was attached to the original Note executed by Wachovia Mortgage Corporation and the Parks on February 19, 2008.

U.S. Bank is considered the proper holder of the Note and all rights and obligations established within the Note were subsequently transferred to it by Wachovia initially indorsing the Note "in blank."

The Parks further assert that, "[a]uthentic evidence of the assignment and endorsement of an order note is required to support the use of executory process." *Aetna Life Ins. Co. v. Lama Trusts*, 28,328 (La. App. 2 Cir. 5/8/96), 674 So.2d 1086, 1089. Here, U.S. Bank attached the original promissory note between Wachovia and the appellants to its petition for executory process. In doing so, U.S. Bank demonstrated that it had possession of the note and was entitled to enforce the terms of the instrument as its bearer. As per La. R.S. 9:4422, authentic evidence of how U.S. Bank came into possession of the note was not necessary to establish that it had standing to bring the action for executory process. *See, First Nat. Bank of Lafayette v. Gaddis*, 250 So.2d 504, 509-10 (La. Ct. App. 1971).[7]

*Effect of the Loan Modification Agreement*

The Parks next contended in their motion for permanent injunction that when they executed the Loan Modification Agreement with Wells Fargo on March 1, 2013, this effectively cancelled the Note and created a new note and mortgage with separate rights and obligations only enforceable by Wells Fargo. The Parks also assert that the Loan Modification materially changed the terms of the Note; therefore this Court's prior holding in *Federal Nat. Mortg. Assoc. v. Thao Thi Duong*, *supra*, is inapplicable to the instant case.

To support their assertion, the Parks heavily rely on their previous argument concerning the Note, that by Wells Fargo identifying itself as "Lender," the Loan Modification Agreement became an "order note" pursuant to La. R.S. 10:3-109(b). The Parks conclude in their petition for permanent injunction that U.S. Bank was

---

[7] *See also*, comment (d) for La. C.C.P. art. 2635, which states, in part: "[i]f the mortgage note is made payable to the order of the mortgagor and by him endorsed in blank, and the act of mortgage so recites, no authentic evidence of the transfer by the mortgagee is required."

not the named lender on the Note. Additionally, the Parks argue that because the Note was an Order Note, and U.S. Bank failed to provide evidence to show the subsequent chain of assignments and transfers, as required to prove its legal right to pursue executory process, they were entitled to permanent injunctive relief. As we have previously stated, however, as the holder of the promissory note, regardless of its negotiability, U.S. Bank was entitled to executory process without the need to present authentic evidence of any assignments and transfers. La. R.S. 9:4422(3). Therefore, upon our *de novo* review, we find this argument is without merit.

The terms of the original Note secure to the lender "(i) the repayment of the Loan, ***and all renewals, extensions and modifications of the Note***…" (Emphasis added.) Thus, the Loan Modification Agreement is analogous to the previous discussion of the Note. The only difference is that the Parks executed the Loan Modification Agreement with Wells Fargo rather than Wachovia Mortgage Corporation. By making the Note payable to Wells Fargo, an identified entity, the modification creates an Order Note as per La. R.S. 10:3-109(b). However, there is no evidence provided in the record which suggests that Wells Fargo specially indorsed the modified Note prior to its transfer to U.S. Bank; therefore, the modified Note became a Bearer Note, negotiated by its transfer into U.S. Bank's possession alone, in accordance with R.S. 10:3-205(b). Upon the Note's transfer, U.S. Bank also inherited the right to enforce any obligations secured by such mortgage in accordance with La. C.C. art. 3312.

We now turn to the Parks' argument that the Loan Modification Agreement materially changed the terms of the Note. On its face, the Loan Modification changes the financial obligations owed by the Parks. It is undisputed by the parties, however, that this Loan Modification was executed only to make the Note more affordable for the Parks. A review of the February 25, 2013, modification between

Wells Fargo and the Parks provides that it "amends and supplements" the mortgage dated February 19, 2008.

The Parks nevertheless argue that the Loan Modification Agreement was effectively a novation, thus extinguishing the existing obligation of the original Note by substituting the new obligation of the Loan Modification pursuant to La. C.C. art. 1879. However, as per La. C.C. art. 1880, novation may not be presumed, and the "intention to extinguish the original obligation must be clear and unequivocal." La. C.C. art. 1881 states: "[i]f any substantial part of the original performance is still owed, there is no novation." Here, there is no evidence in the record of a cancellation or substitution of the original promissory note. To the contrary, the 2013 modification specifically references the original debt created by the 2008 note and merely sets forth new terms of payment for the existing unpaid obligation by the appellants. The modification also specifically states that "[n]othing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument." Based on the explicit language of the Loan Modification Agreement, it does not appear it was intended to create an entirely new and distinct note and mortgage. Therefore, we find no merit in the appellants' argument that modification of the 2008 note in any way extinguished it, or affected the enforcement rights of U.S. Bank. *See*, *Arnold v. Hancock*, 06-632 (La. App. 3 Cir. 2/7/07), 950 So.2d 911, 918. Furthermore, any modifications of a conventional mortgage, as in the present case, do not adversely affect any validity or enforceability of the Note for purposes of executory process pursuant to La. R.S. 9:5390(A). Thus, U.S. Bank is entitled to executory process.

## CONCLUSION

The 2008 note between the appellants and Wachovia contemplated both a transfer of ownership and the possibility of a later modification of the mortgage. The 2013 modification of the note by Wells Fargo expressly did not extinguish the

appellants' obligation to repay the balance due on the 2008 note. The blank indorsement of the 2008 note made it permissible to transfer ownership by possession alone, and U.S. Bank did, in fact, have possession of the note at the time it filed its petition for executory process after the appellants' default. U.S. Bank was not required to produce any additional authentic evidence concerning its acquisition of the note.

Based on our *de novo* review of the record, we conclude that the Parks failed to meet their burden to establish that U.S. Bank did not have a cause of action to assert its rights to executory process. Because the Parks have failed to meet their burden to prove that the law does not extend any legal remedy to U.S. Bank based on the facts alleged in its petition, we find no error in the trial court's decision to deny their exception of no cause of action. Furthermore, we find no abuse of discretion by the trial court in its denial of the Parks' request for injunctive relief. Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 2, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-56

**E-NOTIFIED**

29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE TIMOTHY S. MARCEL (DISTRICT JUDGE)
DAVID S. MOYER (APPELLANT)          RACHEL BREAUX (APPELLEE)

**MAILED**

CRIS R. JACKSON (APPELLEE)
JOSEPH H. RILEY, II (APPELLEE)
MATTHEW S. RESOR (APPELLEE)
RADER JACKSON (APPELLEE)
ATTORNEYS AT LAW
935 GRAVIER STREET
SUITE 1400
NEW ORLEANS, LA 70112